# Kruger's Estate.

*Contract—Consideration—Fraud—Evidence— Receipt — Principal and agent—Disclosed principal—Decedents' estates.*

1. At the audit of the account of an executor of an insolvent decedent a claim was presented for $25,000 based on a writing signed by decedent. It appeared that decedent had been the president of a street railway company, and that the claimant was a plumber. Two years before decedent's death it was discovered that the railway company had been illicitly tapping fire lines and unlawfully using city water. Claimant found this out, and suggested to decedent that, if he were given the contract to meter the fire lines, he could arrange it so that the city would make no claim for water previously illicitly used. An oral contract was then made by which a certain amount was fixed for construction work, and a further sum of fifteen per cent on the savings due to such metering. Claimant was paid by the company for the construction work and receipted in full "for all services rendered." Subsequently claimant pressed the decedent to pay him the percentage for the saving, and as a result decedent prepared a paper which was signed by both. In this paper it was recited that claimant had agreed to accept $25,-000 in full payment for metering and that decedent had agreed to pay fifteen per cent on the savings from the metering. The decedent bound himself, his heirs, executors and assigns, and the company, to protect claimant for the full amount of $25,000, further stating, "I will see the above sum is paid you in amounts as may be required from time to time for your personal use." The consideration was stated in the following language: "In consideration of the faithful and efficient service rendered by you to the company, and to me in the matter of metering the fire lines for the company."

2. The only allegation of fraud was that claimant had deceived decedent into the original agreement, not that the contract in question grew out of fraud against the city. The court found as a fact from the evidence in the case that the promise of the payment of percentage on the savings was the express promise of the decedent, and that there was no fraud. *Held*, (1) that the receipt to the company did not bar claimant from demanding payment of the percentage from the decedent's estate; (2) that the writing and the other evidence were sufficient to establish a contract of the decedent based on a valuable consideration to pay claimant the sum of $25,-

000; (3) the evidence was not sufficient to establish fraud; and (4) there was a valuable consideration.

Argued Feb. 3, 1919. Appeals, Nos. 328, 332, Jan. T., 1917, by Third National Bank of Philadelphia and Charles R. Wannemacher, from decree of O. C. Montgomery Co., June T., 1916, No. 42, dismissing exceptions to adjudication in Estate of Charles O. Kruger, deceased. Before BROWN, C. J., STEWART, MOSCHZISKER, WALLING and SIMPSON, JJ. Affirmed.

Exceptions to adjudication. Before SOLLY, J.
The exceptions to the adjudication were dismissed.
Exceptants appealed.

*Errors assigned* were in dismissing exceptions to adjudication.

*Stanley Folz*, of *Sundheim, Folz & Fleisher*, with him *Nicholas H. Larzelere, Humbert B. Powell*, and *Mowitz & Solis-Cohen*, for appellants.—There was no valuable consideration for the Purdy-Kruger agreement of May 1, 1913, to entitle Purdy to participate with creditors in the distribution of Mr. Kruger's insolvent estate: Burkholder v. Plank, 69 Pa. 225; Oberly v. Oberly, 190 Pa. 341; Hoffman's Est., 32 Pa. Superior Ct. 646; Candor's App., 27 Pa. 119; Hummel's Est., 161 Pa. 215; Kern's Est., 171 Pa. 55.

A valid ratification, being equivalent to prior authority, relieves the agent from liability to the third person. By ratification, the principal assumes all responsibility for the act of the agent and the agent is thereby relieved of responsibility: Berger's App., 96 Pa. 443; Hopkins v. Everly, 150 Pa. 117; Harper v. Jackson, 240 Pa. 312.

An express promise to pay for services already rendered under circumstances under which the law imposes no liability upon the promisor, will not be enforced

against the promisor's estate: Fross's App., 105 Pa. 258; Martin's Est., 131 Pa. 638.

*Montgomery Evans,* of *Evans, High, Dettra & Swartz,* with him *Weaver & Drake,* for appellee.—The contract in question is under seal, and, therefore, imports a consideration and creates a legal obligation: Candor & Henderson's App., 27 Pa. 119; Cosgrove v. Cummings, 195 Pa. 497.

Even if there were no legally enforceable obligation upon the obligor, yet if there were a moral obligation, it is sufficient to sustain a subsequent promise to pay: Geiselbrecht v. Geiselbrecht, 8 Pa. Superior Ct. 183; Bailey v. Phila., 167 Pa. 569; Anderson v. Best, 176 Pa. 498; Weber v. Roland, 39 Pa. Superior Ct. 611.

This is true even against a third person who promises to pay the debt of a person whose obligation was void: Leonard v. Duffin, 94 Pa. 213; Snyder's Est., 7 Kulp 409; Owens v. Wehrle, 14 Pa. Superior Ct. 536; Yard v. Patton, 13 Pa. 278; Burkholder v. Plank, 69 Pa. 225.

Where a deed is alleged to be fraudulent against the creditors of grantor, the recital of consideration in the deed must prevail in the absence of substantial evidence of fraud: Ball v. Campbell, 134 Pa. 602.

A search of the entire record will show that there is not a word of testimony to the effect that Purdy either contracted with or made a claim against the Philadelphia Rapid Transit Company on account of the claim covered by this bond of Kruger's.

OPINION BY MR. JUSTICE MOSCHZISKER, February 24, 1919:

Charles O. Kruger died, insolvent, October 4, 1914; at the audit of his executor's account, a claim for $19,-300 was presented by William B. Purdy, being the balance due on a contract under seal, wherein the decedent acknowledged himself indebted to Purdy in the sum of $25,000. The claim was allowed; but, subsequently, cer-

tain creditors petitioned for a reconsideration of the adjudication; after weighing the testimony relating to this application, the court below determined that the grounds depended upon by petitioners were not sustained, and refused to change its prior allowance of the claim. The petitioning creditors have appealed.

In April, 1912, Purdy, who is engaged in the plumbing business, told Kruger that the Philadelphia Rapid Transit Company, of which the latter was president and general manager, had been illicitly tapping fire lines connected with certain of its car barns, and that, if he, the informant, were awarded a contract to meter all such lines, he could arrange it so the city would make no claim for water previously used therefrom. Kruger accepted this suggestion, and entered into an oral ar-rangement with Purdy, whereby it was agreed that, after making required investigations in the water department of the city, Purdy should meter the fire lines wherever necessary, he to be paid the cost of construction, plus ten per cent, and also the further sum of fifteen per cent on the savings due to such metering.

Purdy was paid by the transit company for his actual construction work; and, early in 1915, received from that concern two checks, or vouchers, for $1,500 each, the last paid February 7th, containing this statement: "In full payment for all services rendered Philadelphia Rapid Transit Co. to Jan. 31, 1913."

At the same time, Purdy was pressing Kruger for settlement of the percentage compensation which the former alleged to be due him on account of the savings effected by his work; and, in this connection, on May 1, 1913, Kruger prepared and presented to Purdy the written contract upon which he bases his present claim.

It will be noticed that this contract, which we are about to recite, adjusts and fixes the then controverted and unascertained amount of the percentages, at $25,-000, which sum Purdy agreed to accept in full; further, the writing contains an acknowledgment that

Kruger, personally, had originally agreed to pay these percentages. The contract, signed and sealed by both Purdy and Kruger, individually, reads as follows: "Whereas, William B. Purdy has, this first day of May, 1913, agreed to accept the sum of twenty-five thousand dollars, in full payment for the metering of all fire lines on the properties of the Philadelphia Rapid Transit Company in the City of Philadelphia, through information obtained by Secretary Frank B. Ellis, on April 23, 1912, for which I then agreed to pay the said William B. Purdy fifteen per cent on all savings on fire lines in addition to his regular ten per cent on all other surface lines, for the vast amount of money that he saved the Philadelphia Rapid Transit Company by metering all fire lines, as well as yearly saving. That, in consideration of the faithful and efficient service rendered by you to the Philadelphia Rapid Transit Company, and to me in the matter of metering of fire lines for the company, there is due to you the sum of twenty-five thousand dollars. Now, Know All Men by these Presents, that I Charles O. Kruger, president of the Philadelphia Rapid Transit Company, do hereby bind myself, my heirs, executors and assigns, and the said Philadelphia Rapid Transit Company, to protect the said William B. Purdy, his heirs and executors or assigns, for the full amount of twenty-five thousand dollars. It is further agreed that I will see the above sum is paid you in amounts as may be required by you from time to time for your personal use. Witnesseth, Whereas the said Charles O. Kruger, president of the Philadelphia Rapid Transit Company, agreed to pay or cause to be paid the above amount, I, the said William B. Purdy, agree to accept the same as above mentioned. In Witness Whereof the parties to this agreement have hereunto set their hands and seals on the day and year first above written."

Appellants contend (1) that the contract just quoted "was not based upon a valuable consideration entitling Purdy to participate in the distribution of Mr. Kruger's

insolvent estate with creditors whose claims were based
on a valuable consideration"; and (2) that it "was ob-
tained by fraud." In disposing of these contentions, the
learned president judge of the court below, after dis-
cussing the testimony, states: "I fail to find satisfactory
evidence of either fraud or want of consideration."

We cannot say the court below erred in its con-
clusion that no fraud had been shown. The allegation
in this regard is that Purdy had deceived Kruger into
executing the original agreement, not that the con-
tract here involved grew out of a fraud against the city;
but, even had the latter charge been made, we are not
prepared to hold the evidence would sustain it; so the
effect thereof need not be discussed.

As to the alleged lack of consideration, appellants con-
tend the settlement with the transit company in Febru-
ary, 1913, shows Purdy to have been paid in full for all
work and services rendered by him in metering that
corporation's fire lines; and they argue that, under these
circumstances, when the contract in suit was subse-
quently signed, there was no personal liability on the
part of Kruger to Purdy, first, because the entire origi-
nal debt had been discharged by the latter's receipt to
the transit company, and, second, because this trans-
action showed that Purdy recognized Kruger as repre-
senting a disclosed principal, who thereby ratified its
agent's acts. After carefully considering these conten-
tions, and all they involve, we are not convinced the
orphans' court erred in refusing to sustain them.

Before the testimony contained in the present record
was considered, the court below, in its original adjudi-
cation (after referring to the payment made by the
transit company in February, 1913), said: "The com-
pany therefore ratified the action of its president in con-
tracting with Purdy for metering its fire lines"; but, it
will be noted, this finding is not that all the terms of the
original agreement between Kruger and Purdy, particu-
larly as to the percentage on savings, were then ratified;

and, in the opinion filed after the testimony was before the court, there is no mention whatever of ratification. Be this as it may, however, the written agreement, signed by both Kruger and Purdy, demonstrates that, as between them, it was not intended Kruger should be discharged from his personal liability; and Judge SOLLY'S second opinion proceeds upon the basis that the testimony shows Kruger, from the first, throughout his dealings with Purdy, assumed a personal liability.

The court below says, inter alia, "The work of metering the fire lines was done for the company, under the order of its president, and paid for by the company, but the agreement as to the percentage on the savings of water charges which Purdy was to receive was the express promise of Kruger." This finding is not formally complained of; but, if it were, we could not say there was error therein.

With the finding just quoted accepted as a fact, there is nothing in the receipt given by Purdy to the transit company which operates against a recovery here; the document simply states the money then accepted by Purdy to be in full payment of all services rendered that corporation, not for services rendered Kruger, or even in full for all services rendered in connection with metering the fire lines of the transit company. In other words, the recital of this receipt contains no declaration which is inconsistent with Purdy's present claim against Kruger; for, by the written contract in suit, Kruger expressly agrees to pay Purdy, "In consideration of the faithful and efficient service rendered by" him, "to me [Kruger]," not for metering the lines of the transit company, but "in the matter of metering" those lines.

As suggested by the court below, it may well be that Kruger thought it was his duty, as general manager, to have originally achieved the savings and annual economies subsequently accomplished by Purdy, in connection with, or "in the matter of," metering the transit company's fire lines; and that he always intended, if, for

any reason, that corporation might be unwilling to pay a compensation commensurate with what he considered the value of Purdy's services, to discharge that responsibility himself. If this was Kruger's attitude (and the paper in suit strongly indicates it was) then his assumption of liability would be quite lawful; and, when the unpaid amount due Purdy was finally settled between them, it, like any other lawful debt, might be put into the form of a written obligation. Thus viewed, the contract in suit is supported by a valuable consideration; therefore, we cannot say the court below erred in sustaining its validity.

The assignments of error are overruled and the decree is affirmed.